715 So.2d 126 (1998)
STATE of Louisiana, Appellee,
v.
Judy Ann MACK, Appellant.
No. 30832-KA.
Court of Appeal of Louisiana, Second Circuit.
June 24, 1998.
*127 Indigent Defender Office by David R. McClatchey, for Appellant.
Louisiana Appellate Project by Amy C. Ellender, Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Eron J. Brainard, Tommy J. Johnson, Assistant District Attorneys, for Appellee.
Before MARVIN, C.J., and NORRIS and WILLIAMS, JJ.
MARVIN, Chief Judge.
After being convicted of simple burglary of an inhabited dwelling, Judy Ann Mack appeals her conviction and sentence to two years at hard labor, with one year suspended. La. R.S. 14:62.2 requires at least one year imprisonment at hard labor without benefit of probation, parole or suspension of sentence. Mack was also placed on two years supervised probation and ordered to pay $20 per month to Probation and Parole and $10 per month to the Indigent Defender Board while on probation, or in default thereof, to serve 30 days in the parish jail concurrent with her hard labor sentence.
Mack complains that the evidence is insufficient to support her conviction, her sentence is excessive and the trial court erred in requiring her as an indigent defendant to serve jail time in default of paying court costs.
We affirm the conviction. Because the sentence is not the minimum mandatory sentence and was not imposed in accord with La.C.Cr.P. art. 894.1, we vacate the sentence and remand to the district court for resentencing.

FACTS
On September 27, 1995, a 29-year-old Mack burglarized the home of Mrs. Jessie May Dudley Thomas on Plum Street in Shreveport. Mrs. Thomas was hospitalized at the time. Her nephew had been in the home the night before the burglary and had found everything to be in order. Mack concedes that a burglary was committed, but by a man she named as "Curtis Jones." She had earlier told "Jones" of Thomas's absence from the house. Mrs. Thomas returned to her home the day after the burglary to discover the back door had been forcibly opened and that her lawnmower and new television had been stolen.
Joel Johnson, also a resident of Plum Street, was awakened that morning by the sound of his dogs barking. Going outside to investigate, he observed Mack and a male he could not identify ["Jones"] walking down the street and then stopping at Thomas's house. "Jones" went into Thomas's yard, walked up to her porch, opened a screen door and entered the porch. Although Mack had momentarily been in the yard, she began walking back and forth in front of the house while looking up and down the street.
"Jones" removed a flower pot from the porch and took it to the corner of the street. Knowing Thomas was in the hospital, Johnson became suspicious and called the police. A patrol car arrived and shined a light on the house, but soon departed when nothing appeared amiss. Mack and "Jones" then returned to the scene. As "Jones" went to the back of the house, Mack remained in front of the house, walking up and down the street while looking in all directions. "Jones" kicked open the back door of Thomas's house and removed the lawnmower and television.
Another Plum Street resident, Francis Stinson, called the police around 7:30 that morning. Corporal R.R. Washington of the Shreveport Police Department responded to the call. Washington observed that the back door of the home had been kicked open, the lock on the door broken, and saw a footprint on the door. Washington also noticed that several items of clothing had been thrown on the floor, that a bed had been turned up as if someone had been looking underneath it, and a television was turned over in the living room. Washington also found the flower pot taken from the home at the corner of the street.
*128 Shreveport Police Corporal Riley Young, Jr. interviewed Mack on October 10, 1995 about her involvement in the burglary. This interview was recorded and the recording played at trial. Young told Mack that she would be released on her own recognizance if she cooperated. Mack told Young that she did not go in the house, but admitted she "was the lookout."
Following the prosecution's presentation of its evidence, the defense moved for a directed verdict, which was denied. Mack then elected to testify on her own behalf. Mack said at trial that she had left her boyfriend's home about 2:30 a.m. the date of the burglary and was going to the home of her mother, who lived across the street from Thomas, when she saw "Jones" coming from the back of Thomas's house carrying a lawnmower. Mack said she told "Jones" to return it, then continued home. She did not call the police because she felt it was none of her business. Mack also testified that what she meant when she told Cpl. Young that she was a "lookout" was that:
I was looking at him coming out of her house. I stood up on the corner looking at him coming out of her house with her stuff. That's what I meant. I wasn't his lookout... I just was standing up there looking at him taking that woman's stuff out of her house.
(Record, p. 84)
Mack initially testified that the evening of the burglary was the first time she had ever met "Jones." However, she later testified that she had first met him a week earlier, and at that time told him Thomas was in the hospital.
Mack was arrested on October 10, 1995 for simple burglary of an inhabited dwelling and was found guilty after a bench trial held August 25, 1997.

DISCUSSION

Sufficiency of Evidence
To gain review in the trial court of the sufficiency of the evidence to convict, a defendant "may move for a post verdict judgment of acquittal." La.C.Cr.P. art. 821. The post-verdict motion in the trial court is not, however, a prerequisite to obtain the sufficiency review in the appellate court. The assignment of error of the sufficiency of evidence to convict mandates appellate review exercises his Art. 821 option in the trial court. La.C.Cr.P. art. 920. State v. Green, 28,994 (La.App.2d Cir. 2/26/97), 691 So.2d 1273, J. Hightower concurring.
Here Mack raises the sufficiency of the evidence to convict in her assignments of error to mandate our review. We review the sufficiency assignment before other assignments because acquittal on that assignment makes it unnecessary for us to consider other assignments. The issue is framed whether a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) in light most favorable to the prosecution, could reasonably conclude that all of the essential elements of the offense have been proved beyond a reasonable doubt. See State v. Hearold, 603 So.2d 731 (La.1992).
The Jackson standard of review applies to direct and circumstantial evidence. State v. Wright, 445 So.2d 1198 (La.1984); State v. Neeley, 30,008 (La.App.2d Cir. 12/23/97), 704 So.2d 443. The rule for circumstantial evidence is: Assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. La. R.S. 15:438.
An appellate court reviewing the sufficiency of the evidence must resolve any conflict in direct evidence by viewing the direct evidence in light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstantial evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Lott, 535 So.2d 963 (La.App. 2d Cir.1988).
The due process standard of review enunciated in Jackson v. Virginia, supra, does not allow an appellate court to substitute its appreciation of the evidence for that of the factfinder. State v. Robertson, 96-1048 *129 (La.10/4/96), 680 So.2d 1165. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual finding. State v. Ford, 28,724 (La. App.2d Cir. 10/30/96), 682 So.2d 847.
Simple burglary of an inhabited dwelling is defined in La. R.S. 14:62.2 as "the unauthorized entry of any inhabited dwelling, house, apartment or other structure used in whole or in part as a home or place of abode by a person or persons with the intent to commit a felony or any theft therein...." In order to convict an accused of simple burglary of an inhabited dwelling, the state must prove that there was an unauthorized entry, the structure was inhabited at the time of entry, and the defendant intended, at the time of entry, to commit a felony or theft. State v. Martin, 28,489 (La.App.2d Cir. 8/21/96), 679 So.2d 557, writ denied, 96-2367 (La.2/7/97), 688 So.2d 498. Mack concedes that a burglary was committed, albeit only by "Curtis Jones."
The mere fact that Mack did not actually enter Thomas's home or carry away any of Thomas's belongings is of no material importance under the circumstances of this record. All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals. La. R.S. 14:24. Mack was charged as a principal in the crime and not as an accessory after the fact.
A person who serves as a "lookout" is a principal to burglary. State v. Brown, 504 So.2d 1055 (La.App. 1st Cir.1987), writ denied, 506 So.2d 1223 (La.1987). Mack admitted to Cpl. Young that she was a "lookout." Her conduct on the street also implicated her.
Johnson, Mrs. Thomas's neighbor who initially called police, could not see Mack's face clearly because his observation occurred during pre-dawn darkness. He told the police that the female he saw fit the physical description of his neighbor, Judy Mack, and walked like her. Johnson testified that he was fairly certain the female he saw was Mack. Removing any doubt that it was indeed Mack that Johnson had seen with the male individual, Mack testified at trial that she was in front of Mrs. Thomas's house that morning while approaching her mother's home, but only saw "Jones" coming from the back of Thomas's house with a lawnmower before telling him that he should return it.
When viewed in a light most favorable to the prosecution, the evidence presented at trial was legally sufficient to establish beyond a reasonable doubt that Mack acted as a "lookout," and thus was a principal to the crime.

Excessiveness of Sentence
Immediately after the trial court imposed her sentence, Mack orally motioned for reconsideration of sentence, reminding the trial judge that she did not receive any crime proceeds and suggesting she played only a minor role in the incident. The motion to reconsider sentence was denied. Mack now assigns as error the trial court's denial of her motion to reconsider. She argues that the trial court failed to sufficiently articulate reasons for her sentence, failed to consider mitigating factors, and imposed an excessive sentence. A pre-sentence investigation report was not ordered by the trial court. When Mack requested a post-conviction bond prior to sentencing, the trial court was told by the prosecutor that as far as he knew, Mack did not have a prior criminal record. We note that the record contains the criminal record of a Judy M. Gibbs, arrested in 1988 for aggravated battery. Judy M. Gibbs has Mack's date of birth and the same social security number that appears in the arrest report.
Mack's sentence is slightly more than the mandated minimum sentence for the crime. La. R.S. 14:62.2 provides that anyone convicted of simple burglary of an inhabited dwelling shall be imprisoned at hard labor for not less than one year, without benefit of parole, probation or suspension of sentence, nor more than twelve years. Mack received a sentence of two years imprisonment at hard labor, but with one year suspended. The statute mandates a one-year imprisonment at hard labor as the minimum sentence.
*130 A sentencing record must show that the trial court considered the criteria in La.C.Cr.P. art. 894.1. The trial court need not articulate every aggravating and mitigating circumstance but the record must reflect that the guidelines were considered. State v. Smith, 433 So.2d 688 (La.1983). Important elements are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981).
Appellate review inquires whether the sentence is too severe considering the circumstances of the case and the defendant's background. A sentence is constitutionally excessive if it is grossly out of proportion to the seriousness of the offense or is purposeless or needless. State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered to be grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks one's sense of justice. State v. Hogan, 480 So.2d 288 (La.1985).
At sentencing, the trial court stated:
All right. This matter is on the docket today to be sentenced. She has been found guilty in a bench trial, guilty as charged of simple burglary of an inhabited dwelling. The Court will sentence you as follows: the Court will sentence you to two years at hard labor. The Court will suspend all but one year. One year is to be served without benefit of parole, probation or suspension of sentence, credit is given for time served. In addition, the Court will place you on two years' supervised probation. Special conditions of probation, that you have no contact with the victim, also the Court is going to order you to pay twenty dollars per month to probation and parole while on probation, ten dollars per month to the Indigent Defender Board while on probation, and the Court is going to sentence you to thirty days in the parish jail in lieu of court costs to run concurrently. Credit is given for time served....
(Record, p. 98)
The trial court did not recite the factors of, or comply with, La.C.Cr.P. art. 894.1 in imposing the sentence. Defense counsel immediately made an oral motion for reconsideration of sentence, pointing out to the trial court that Mack did not receive any gains from the burglary and played only a minor role, to which the court responded:
I have a request for reconsideration of sentence which is denied. The facts indicate that the defendant was a principal and acted as a lookout to the burglary which took place. In fact, the defendant had knowledge that the victim was in the hospital at the time of the offense and provided that information to the offender, in which the burglary took place. Therefore your motion is denied.
(Record, p. 99)
This recitation contains only the circumstances of the crime and fails to meet the La.C.Cr.P. art. 894.1 mandate, and then only in response to Mack's motion to reconsider.
Even when there has not been full compliance with La.C.Cr.P. art. 894.1, remand is unnecessary if the record clearly shows an adequate factual basis for the sentence imposed. State v. Lanclos, 419 So.2d 475 (La. 1982). A mandatory minimum sentence without probation, parole or suspension of sentence must be imposed, however, when required. La.C.Cr.P. art. 894.1(C) requires the trial court to state for the record the considerations taken into account and the factual basis therefor in imposing sentence above the minimum mandatory sentence. La.C.Cr.P. art. 894.1 contemplates a detailed record to allow for a reasoned appellate review of allegedly excessive sentences. State v. Lanclos, supra.
The trial court did not suggest any circumstances of Mack's personal history. We do not know her employment record or whether or not she has any dependents. No mention is made about her criminal history. On this record, Mack's sentence is based solely upon the circumstances of the burglary. Beyond these circumstances, we have no articulation of the factors upon which the trial court based its sentencing choice.
We shall remand the case for resentencing in accordance with La.C.Cr.P. art. 894.1 without considering whether this near-minimum sentence is "excessive." Upon resentencing, *131 the trial court is to comply with La.C.Cr.P. art. 894.1 by stating for the record the considerations taken into account when determining the appropriate sentence to be imposed.

Illegal Sentence
As her third assignment of error, Mack complains that the trial court erred in ordering her to serve jail time in lieu of court costs. An indigent defendant cannot be subjected to default time in lieu of the payment of a fine, costs or restitution. State v. Hughes, 587 So.2d 31 (La.App. 2d Cir.1991), writ denied, 590 So.2d 1197 (La.1992).

Errors Patent
At re-sentencing, the trial court is required to inform defendant of the prescriptive period for post-conviction relief. La.C.Cr.P. art. 930.8(C). When announcing the sentence, the trial court informed Mack that the time limitation for post-conviction relief is three years, but did not state that this period begins to run when the judgment becomes final under La.C.Cr.P. art. 914 or 922. We direct the district court to correctly inform Mack at resentencing of the provisions of La.C.Cr.P. art. 930.8.

DECREE
The conviction is AFFIRMED. The sentence is VACATED and the case is remanded for resentencing.